IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CR-350-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| HAROLD VERNARD GREENE, JR., | ) | |
| | ) | |
| Defendant. | ) | |

On June 8, 2020, Harold Vernard Greene, Jr. ("Greene" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582), and filed an exhibit in support [D.E. 33]. On September 15, 2020, the government responded in opposition [D.E. 37]. On October 13, 2020, Greene replied [D.E. 39]. On January 26, 2021, Greene, through counsel, filed a memorandum and exhibits in support of his motion for compassionate release [D.E. 43, 46]. On February 8, 2021, the government filed a supplemental response in opposition [D.E. 47]. As explained below, the court denies Greene's motion.

I.

On April 19, 2018, without a written plea agreement, Greene pleaded guilty to possession of contraband (buprenorphine) in prison. See [D.E. 23]. On August 1, 2018, the court held a sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See [D.E. 30–32]. The court calculated Greene's total offense level to be 11, his criminal history category to be V, and his advisory guideline range to be 24 to 30 months' imprisonment. See [D.E. 32] 1. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court

sentenced Greene to 24 months' imprisonment to run consecutive to Greene's existing term of imprisonment. See [D.E. 31] 2. Greene did not appeal.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another

2

extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) Medical Condition of the Defendant.—

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is—

    (I) suffering from a serious physical or medical condition,

    (II) suffering from a serious functional or cognitive impairment, or

    (III) experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

    (C) Family Circumstances.—

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. Kibble, No. 20-7009, 2021 WL 1216543, at *3–4 (4th Cir. Apr. 1, 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 2021 WL 1216543, at *3–4. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., id. at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v.

---

    (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

4

Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

Greene states that he submitted a request for compassionate release to the warden, and alternatively asks the court to waive the exhaustion requirement. See [D.E. 33] 5; [D.E. 46] 4–6; [D.E. 46-1]. The government contends that Greene has not met section 3582's exhaustion requirement. See [D.E. 37] 2. The court assumes without deciding that Greene has exhausted his administrative remedies. See United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).[2] Accordingly, the court addresses Greene's claim on the merits.

Greene seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Greene cites the COVID-19 pandemic, his bout with and recovery from COVID-19, his age, and his heartburn, chronic ulcers, acid reflux, and obesity. See [D.E. 33] 3; [D.E. 43]; [D.E. 46] 12–15. Greene also cites the conditions at FCI Fort Dix, his rehabilitation efforts, his release plan, and that he has served over 50% of his sentence. See [D.E. 33] 2–5; [D.E. 33-1]; [D.E. 39-1]; [D.E. 46] 10–12, 18–21.

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant is "suffering from a serious physical or medical condition . . . from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Although Greene states that he suffers from heartburn, chronic ulcers, acid reflux, and obesity, he has not demonstrated that he is not going to recover from these conditions or that they cannot be treated while Greene serves his

---

[2] The Fourth Circuit has not addressed whether section 3582's exhaustion requirement is a jurisdictional or claims-processing requirement. The court assumes without deciding that the requirement is a claims-processing rule, and that the government must "properly invoke" the rule for this court to enforce it. See Alam, 960 F.3d at 833–34.

5

sentence. The same holds true were Greene to contract COVID-19 again. Accordingly, reducing Greene's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Greene's medical history, Greene's rehabilitation efforts, and his release plan are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors counsel against reducing Greene's sentence. See Kibble, 2021 WL 1216543, at *4–5; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Greene is 40 years old and engaged in serious criminal conduct in 2017. See PSR ¶¶ 5–6. While serving an 84-month federal sentence at FCI Butner for possession with intent to distribute 500 grams or more of cocaine, Greene possessed burprenorphine strips. See id. Greene purchased the drugs, hid them in his headphones, and managed to consume two strips before correctional officers confiscated them. See id. Greene's refusal to comply with institutional norms and the law is nothing new. Greene committed six institutional violations between 2015 and 2019, including possessing or using drugs or alcohol on three occasions, phone abuse, and refusing to work. See id. ¶ 18; [D.E. 37] 2, 19; [D.E. 47] 2. Greene's institutional infractions follow a long history of drug dealing, including convictions for possession of drug paraphernalia, possession with intent to manufacture, sell, or deliver a Schedule I controlled substance, possession with intent to sell and deliver cocaine (two counts), possession with intent to sell and deliver heroin, trafficking in cocaine, and possession with intent to distribute 500 grams or more of cocaine. See PSR ¶¶ 11–19. Sadly,

6

Greene has learned nothing from his numerous drug convictions and time in custody. Furthermore, Greene is a violent recidivist with additional convictions for involuntary manslaughter (committed at age fifteen) and reckless driving. See id. Greene has performed poorly both in prison and on probation. See id. Nonetheless, Greene has taken some positive steps while incarcerated. See [D.E. 33] 4; [D.E. 39-1]; [D.E. 46] 19–20.

The court has considered Greene's exposure to COVID-19, his health conditions, his rehabilitation efforts, and his release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Having considered the entire record, the steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Greene's arguments, Greene's serious misconduct while incarcerated, and the need to punish Greene for his serious criminal behavior, to incapacitate Greene, to promote respect for the law, to deter others, and to protect society, the court declines to grant Greene's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

As for Greene's request for home confinement, Greene seeks relief under the CARES Act. See [D.E. 33, 46]. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No.

4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). As such, the court dismisses Greene's request for home confinement.

II.

In sum, the court DENIES Greene's motion for compassionate release [D.E. 33], and DISMISSES Greene's request for home confinement.

SO ORDERED. This 30 day of April 2021.

JAMES C. DEVER III
United States District Judge